**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernard Laborin,               ) | CIV 13-2167-PHX-MHB |
| Plaintiff,           ) | **ORDER** |
| vs.                            ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant.           ) | |

Pending before the Court is Plaintiff Bernard Laborin's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning August 8, 2008. (Transcript of Administrative Record ("Tr.") at 13, 163-66, 175-83.) His applications were denied initially and on reconsideration. (Tr. at 72-89, 90-106.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 118.) A hearing was held on August 9, 2012, (Tr. at 38-71), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 10-28). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

  (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

  (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 8, 2008 – the alleged onset date. (Tr. at 17.) At step two, she found that Plaintiff had the following severe impairments: lumbar herniated nucleus pulposus, status post diskectomy with residual foot drop, mild degenerative disc disease and facet disease, obstructive sleep apnea, asthma, morbid obesity, and hypertension. (Tr. at 17-18.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 18.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to [] lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk with normal breaks about four out of eight hours; sit with normal breaks about six out of eight hours; never push or pull with the right lower extremity; never climb ladders, ropes, or scaffolds; occasionally crawl; and frequently climb ramps or stairs. The claimant must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and unprotected heights. The claimant must avoid exposure to moving machinery. He needs to sit/stand at will."[1] (Tr. at 18-21.) The ALJ determined that Plaintiff was unable to perform past relevant work, but based on his age, education, work experience, and residual functional capacity, there are jobs

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 21-22.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from August 8, 2008, through the date of her decision. (Tr. at 22-23.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; (2) failing to properly consider his subjective complaints; (3) failing to properly consider lay witness or third-party statements; and (4) failing to properly consider "whether a listed impairment is met or equaled." Plaintiff requests that the Court remand for determination of benefits.

### A. Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Dat Tran, M.D., relying instead upon the opinions of the state agency physicians and reports of the consultative examiners.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other

- 4 -

substantial evidence in the record," then it should not be given controlling weight. Orn v. Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

Since the opinion of Dr. Tran was contradicted by consultative and reviewing doctors' opinions, as well as, other objective medical evidence, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In March 2010, Keith Cunningham, M.D., performed an examination of Plaintiff in connection with his disability application. (Tr. at 446-52.) He noted that Plaintiff was massively obese but exhibited largely normal examination findings, including strength and range of motion, except for in his right foot, which had complete foot drop and decreased sensation and strength. Dr. Cunningham diagnosed chronic right foot drop secondary to lumbar radiculopathy, morbid obesity, suspected sleep apnea, and high blood pressure. Dr. Cunningham completed an opinion of Plaintiff's work-related activities in which he opined that Plaintiff could lift or carry 50 pounds occasionally and 10 pounds frequently; stand and walk six to eight hours per eight-hour workday; occasionally stoop, crouch, and climb ramps and stairs; never kneel, crawl, or climb ladders, ropes,

or scaffolds; and should avoid working around heights. He also noted that Plaintiff used an assistive device. (Tr. at 446-52.)

In March 2011, Donald Fruchtman, D.O., also performed an evaluation of Plaintiff in connection with his disability application. (Tr. at 556-63.) Dr. Fruchtman found that Plaintiff had difficulty moving about, had discomfort squatting, had limited range of motion and abilities due to his right foot drop, walked with a limp, had pain and tenderness in his lumbar spine region and hip joints, and exhibited pain on straight leg raise tests, but had full (5/5) strength in his arms and left leg and largely normal sensation and reflexes. Dr. Fruchtman diagnosed lumbar disc syndrome with neuropathy, right foot drop secondary to nerve damage, morbid obesity, and high blood pressure. Dr. Fruchtman also completed an opinion of Plaintiff's work-related abilities in which he opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand and walk two hours per eight-hour workday; sit for six to eight hours; never climb; occasionally stoop and crouch; frequently kneel and crawl; and should avoid working around heights and moving machinery. (Tr. at 556-63.)

In May 2011, state agency physician Terry Ostrowski, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk four and sit six hours per eight-hour workday; could not push or pull with his right foot; frequently climb ramps and stairs; occasionally crawl; never climb ladders, ropes, or scaffolds; could perform all other postural activities without restriction; and should avoid concentrated exposure to pulmonary irritants and hazards. (Tr. at 84-86.) Another state agency physician, John Fahlberg, M.D., later reviewed Plaintiff's medical records and largely agreed (Tr. at 99-102), as did a subsequent reviewing state agency doctor (Tr. at 583-84).

Finally, Dr. Tran completed a medical source statement regarding Plaintiff's abilities in which he opined that Plaintiff could sit less than two hours; stand and walk less than two hours; lift and carry less than 10 pounds; never perform most postural activities and never use his right foot; and should avoid any exposure to heights, moving machinery, marked changes in temperature and humidity, driving, and moderate exposure to dust, fumes, gases. He added that Plaintiff would be

1 further limited by severe pain in his leg and was not able to work on a full time basis due to
2 "dysfunction and use right leg [and] severe pain lower back." (Tr. at 615-16.)

3       In his evaluation of the objective medical evidence, the ALJ first addressed state
4 agency physicians Dr. Ostrowski's (Tr. at 84-86) and Dr. Fahlberg's (Tr. at 99-102) opinions that
5 Plaintiff could perform a range of light work and had the ability to stand and walk for four hours of
6 an eight-hour workday. (Tr. at 20.) The ALJ found that these opinions were consistent with the
7 record as a whole and gave them "great weight." (Tr. at 20.) See 20 C.F.R. § 404.1527(d)(2)(i)
8 (state agency medical consultants "are highly qualified physicians, psychologists, and other medical
9 specialists who are also experts in Social Security disability evaluation"); Thomas v. Barnhart, 278
10 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non treating or non examining physicians may also
11 serve as substantial evidence when the opinions are consistent with independent clinical findings
12 or other evidence in the record.").

13       Next, the ALJ considered Dr. Cunningham's March 2010 opinion that Plaintiff could lift and
14 carry 50 pounds occasionally and 10 pounds frequently and stand and walk six to eight hours in an
15 eight-hour workday. (Tr. at 20, 446-52.) The ALJ gave Dr. Cunningham's opinion "significant
16 weight" because it was supported by an actual examination of Plaintiff – which, as noted above,
17 showed mostly normal findings aside from Plaintiff's right foot drop and resulting limitations. (Tr.
18 at 446-52.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's
19 "opinion alone constitutes substantial evidence, because it rests on his own independent examination
20 of" the claimant). The ALJ recognized that Dr. Cunningham opined that Plaintiff had more postural
21 limitations than the state agency doctors (e.g., that he could never kneel or crawl), but also that Dr.
22 Cunningham opined that Plaintiff had a "greater exertional capacity" and could lift up to 50 pounds
23 (instead of the 20 that the state agency doctors had opined). (Tr. at 20, 449.) The ALJ also pointed
24 out that Dr. Cunningham did not have an opportunity to review all of Plaintiff's medical records,
25 and thus did not have a longitudinal picture of Plaintiff's impairments. (Tr. at 20.)

26       Third, the ALJ discussed Dr. Fruchtman's March 2011 opinion that Plaintiff could perform
27 a range of light work but could only stand and walk two hours per eight-hour workday. (Tr. at 20,
28 556-63.) The ALJ gave the opinion "some weight" after finding that certain restrictions set forth

1  in the opinion were reasonable and supported by the record (e.g., that Plaintiff should avoid
2  exposure to moving machinery due to his foot drop), but gave other portions of the opinion little
3  weight (e.g., that Plaintiff could only stand and walk two hours total per eight-hour workday)
4  because it was "at odds" with another examining doctor's opinion and the state agency doctors'
5  opinions. (Tr. at 20.)  Moreover, the ALJ found that the residual functional capacity assessment
6  allowed Plaintiff to change positions between sitting and standing at will, which gave Plaintiff
7  "flexibility" in completing a workday. (Tr. at 20.)

8  Finally, the ALJ addressed Dr. Tran's opinion that Plaintiff was unable to work full time;
9  could sit, stand, and walk less than two hours each; could never lift more than 10 pounds; and could
10 never perform postural movements. (Tr. at 20, 615-16.)  The ALJ gave this opinion "very little
11 weight" for a number of reasons. (Tr. at 20.)  The ALJ stated that Dr. Tran's opinion was "extreme
12 and inconsistent with every other opinion of record." (Tr. at 20.)  See 20 C.F.R. § 404.1527(c)(4)
13 (stating an ALJ must consider whether an opinion is consistent with the record as a whole); Batson
14 v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians'
15 opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective
16 medical findings).  Furthermore, the ALJ determined that Dr. Tran's opinion was completed on a
17 check-the-box form with "little to no supporting findings/evidence." (Tr. at 20.)  See 20 C.F.R. §
18 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we
19 will give that opinion."); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that
20 the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases
21 of their conclusions.").

22 The Court finds that the ALJ properly weighed the medical source opinion evidence,
23 and gave specific and legitimate reasons, based on substantial evidence in the record, for
24 discounting Dr. Tran's opinion.  The ALJ properly discredited the medical opinion due to
25 inconsistencies with Plaintiff's treatment record and the medical evidence as a whole.  The
26 ALJ also found that said opinions were brief and lacked supporting clinical findings.  See,
27 e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity
28 between doctor's questionnaire responses and her medical records provides a specific and

- 8 -

1 legitimate reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan, 242 F.3d at 1149 (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"). Therefore, the Court finds no error.

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant

that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Born in 1968, Plaintiff was 40 years old on his alleged onset date. He completed ninth grade and worked in the relevant past as a heavy equipment operator and construction laborer. He last worked in August 2008, after which he collected unemployment benefits and looked for work.

Plaintiff was represented by an attorney at the administrative hearing. (Tr. at 39.) Plaintiff testified that his main impediments to working were pain in his back, right foot drop (for which he wore a brace), asthma, and sleep apnea. (Tr. at 46.) He said that the 2008 lumbar discectomy surgery was not successful because it did not fix his foot drop and his pain was much worse after the surgery. (Tr. at 47-48.) Plaintiff said that the injections helped "for a couple of days" only (Tr. at 48, 59), and that the narcotic pain medications made him dizzy and sleepy. (Tr. at 58.) He said that doing any activity for too long – including sitting, standing, and walking – aggravated his pain. (Tr. at 49-50.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made sufficient credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding his pain and

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair, 885 F.2d at 603. The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 10 -

1  limitations.  Although the ALJ recognized that Plaintiff's medically determinable
2  impairments could reasonably be expected to cause the alleged symptoms, she also found that
3  Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
4  symptoms were not fully credible. (Tr. at 19-20.) "[Q]uestions of credibility and resolutions
5  of conflicts in the testimony are functions solely of the ALJ." Greger v. Barnhart, 464 F.3d
6  968, 972 (9th Cir. 2006) (citation and internal quotation marks omitted).  The court defers to
7  the ALJ's credibility determination "where, as here, the evidence reasonably supports the
8  ALJ's decision." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

9        Significantly, the ALJ relied on several inconsistencies in Plaintiff's statements in finding
10 his claims to be incredible. (Tr. at 19.) See 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must
11 consider whether there are conflicts between a claimant's statements and the rest of the evidence).
12 Specifically, the ALJ found that Plaintiff testified that epidural injections only helped "for a couple
13 of days," (Tr. at 48), yet the medical records demonstrated that the injections were much more
14 effective and long-lasting (Tr. at 19).  Indeed, Plaintiff reported to his doctors that he had "well over
15 80% relief for about 45 to 60 days each [injection]." (Tr. at 19, 700, 605, 681.)  Additionally, the
16 ALJ determined that Plaintiff's testimony that he had debilitating pain and medication side effects
17 (Tr. at 58), was belied by his statements to his doctors that his medications were working well and
18 his repeated denial to doctors that his medications caused side effects (Tr. at 19, 595, 678).  See
19 Bray, 554 F.3d at 1227 (upholding credibility determination where ALJ pointed out that claimant's
20 statements at the hearing did not comport with objective evidence in her medical record).

21       The ALJ gave other reasons for finding Plaintiff to be incredible.  Specifically, the ALJ noted
22 that Plaintiff received unemployment benefits – which requires an attestation that one is ready,
23 willing, and able to work and actively looking for work – during some of the same time period that
24 he is alleging disability. (Tr. at 19.) See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)
25 (upholding adverse credibility finding where ALJ noted that, because claimant received
26 unemployment insurance after he was laid off, he apparently considered himself capable of working
27 and held himself out as available for work).  And, Plaintiff testified at the hearing that he actively
28

1  looked for work suggesting that Plaintiff believed that his impairments were not entirely disabling.
2  (Tr. at 19.)

3         In sum, the ALJ cited to the record, identifying a multiple inconsistencies that
4  undermined the veracity of Plaintiff's allegations. (Tr. at 19-20.) While perhaps the
5  individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to
6  discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it
7  was the cumulative effect of all the factors that led to the ALJ's decision. The Court
8  concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with
9  specific, clear and convincing reasons and, therefore, the Court finds no error.

10 **C.    Lay Witness/Third-Party Statements**

11        Plaintiff contends that the ALJ erred in failing to properly consider the statements of
12 his wife, Lupe LaBorin, who completed a questionnaire describing Plaintiff's limited ability
13 to sit, stand, walk, lift and perform postural activities, consistent with an inability to sustain
14 work activity for a full work day or work week. (Tr. at 217-24.)

15        In determining whether a claimant is disabled, an ALJ must consider lay witness
16 testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,
17 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
18 2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
19 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so
20 only upon providing specific reasons that are "germane to each witness." Id. (quoting
21 Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to
22 properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot
23 consider the error harmless unless it can confidently conclude that no reasonable ALJ, when
24 fully crediting the testimony, could have reached a different disability determination." Stout,
25 454 F.3d at 1056.

26        Here, the ALJ considered the third-party statement and found that the statement failed
27 to establish disability. (Tr. at 21.) In reaching this conclusion, the ALJ determined that, like
28 Plaintiff's own statements, the lay witness statement was "simply not consistent with the

1 preponderance of the opinions and observations by medical doctors in this case." (Tr. at 21.)
2 See Bayliss, 427 F.3d at 1218 (affirming rejection of lay witness testimony that was
3 inconsistent with claimant's daily activities and objective medical evidence); Valentine v.
4 Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (where lay witness testimony
5 was similar to the claimant's own complaints, which the ALJ had discredited for clear and
6 convincing reasons, it followed that the ALJ also gave germane reasons for rejecting the lay
7 testimony). Moreover, the ALJ found that the lack of "exacting observations as to dates,
8 frequencies, types and degrees of medical signs and symptoms, or of the frequency or
9 intensity of unusual moods or mannerisms, the accuracy of the third party statements is
10 questionable." (Tr. at 21.) Accordingly, the Court finds that the ALJ properly considered
11 the third-party statement set forth in the record and appropriately disregarded the statement
12 by providing specific reasons "germane to each witness."

13 Even if there was a failure to properly discuss the third-party statement, the Court
14 concludes that no reasonable ALJ, even if fully crediting the statement, could have reached
15 a different disability determination. The limitations and symptoms contained in the third-
16 party statement are entirely similar to and consistent with, those which Plaintiff described in
17 his own testimony. As a result, because this Court concludes that the ALJ's decision to
18 discredit Plaintiff's testimony was supported by substantial evidence, and because the third-
19 party statement was consistent with Plaintiff's testimony, it was reasonable for an ALJ to
20 disregard that statement as well.

21 **D.      Listing 1.04**

22 Plaintiff contends that the ALJ failed to properly consider whether Plaintiff's
23 impairments met or equaled Listing 1.04 in her step three evaluation. Specifically, Plaintiff
24 argues that his impairment – in combination with his obesity – satisfied the requirements of Listing
25 1.04.

26 To meet the requirements of a listing, a claimant must have a medically determinable
27 impairment that satisfies all of the criteria in the listing. See 20 C.F.R. § 404.1525(d). If a
28 claimant has a combination of impairments, no one of which meets a listing, the combination

1  may be found to be medically equivalent to a closely analogous listing if the claimant's
2  combination of impairments is at least equal in severity and duration as those required for the
3  analogous listing. See 20 C.F.R. § 404.1526(a), (b)(3). Listing 1.04(A) requires a disorder
4  of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root
5  or the spinal cord, with evidence of "nerve root compression characterized by
6  neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy
7  with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss
8  and, if there is involvement of the lower back, positive straight-leg raising test (sitting and
9  supine)."

10  Here, the ALJ explicitly considered Plaintiff's obesity under SSR 02-1p, 2002 WL 34686281
11  (evaluation of obesity) and found that, while evidence showed Plaintiff's obesity exacerbated his
12  back pain, there was "no evidence to show it precluded work activities altogether." (Tr. at 20.) The
13  ALJ also explicitly considered the listings contained in section 1.00 (including section 1.04), but
14  concluded that Plaintiff "does not meet or equal the requirements of [listings 1.00, 3.00, and 4.00]
15  nor any other listing." (Tr. at 18.)

16  Indeed, both Dr. Cunningham's and Dr. Fruchtman's examinations indicate largely normal
17  findings aside from weakness and atrophy in Plaintiff's right calf and foot, including full 5/5
18  strength in his arms and left leg and 4/5 strength in his right leg. (Tr. at 446-48, 560.) And, notably,
19  The Pain Center treatment notes demonstrated "normal tone and strength" in both of Plaintiff's legs
20  and negative straight leg raise tests (Tr. at 673-74, 699), as well as "normal" gait and station (Tr. at
21  546, 597). These findings establish that Plaintiff did not meet or medically equal the requirements
22  of listing 1.04.

23  Thus, substantial evidence supports the ALJ's decision that Plaintiff did not have an
24  impairment that met or medically equaled Listing 1.04.

25  \\\
26  \\\
27  \\\
28  \\\

## V. CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 18th day of February, 2015.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge